**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
THE NEWARK PRE-SCHOOL COUNCIL, INC.         )
570 Broad Street, 10th Floor                )
Newark, New Jersey 07102                    )
                                            )
        Plaintiff,                          )
                                            )
        v.                                  )        Case No. _____
                                            )
UNITED STATES DEPARTMENT OF                 )
HEALTH AND HUMAN SERVICES,                  )
200 Independence Avenue, S.W.               )
Washington, DC 20201                        )
                                            )
        and                                 )
                                            )
SYLVIA MATHEWS BURWELL, Secretary           )
U.S. Department of Health and Human Services )
200 Independence Avenue, S.W.               )
Washington, DC 20201                        )
                                            )
        Defendants.                         )
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff The Newark Pre-school Council, Inc. ("Newark Preschool") files this complaint

against defendants United States Department of Health and Human Services and Sylvia Mathews

Burwell, in her official capacity as Secretary, United States Department of Health and Human

Services (collectively "HHS" or "Defendants") pursuant to the Administrative Procedure Act, 5

U.S.C. §§ 701-706 ("APA").  Plaintiff seeks a declaration that HHS acted arbitrarily,

capriciously and contrary to law when it conducted unfair competitions for Head Start grant

awards for the City of Newark, New Jersey service area.  Plaintiff further seeks an injunction

preventing HHS from awarding Head Start grants pursuant to those unfair competitions.

## INTRODUCTION

1.      This dispute concerns Defendants' actions in conducting unlawful competitions for two Head Start grant awards for the City of Newark, New Jersey service area.

2.      Defendants ignored their obligations: (a) to hold an open competition (*see* 42 U.S.C. § 9836(d)) and (b) to treat all applicants fairly and equitably (*see* 45 C.F.R. §§ 1307.1 and 1307.3).

3.      As a result, Plaintiff has been deprived of its right to compete in an open and fair competition for the award of a Head Start grant.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over Newark Preschool's claims pursuant to 28 U.S.C. § 1331.  The declaratory and injunctive relief sought in this action is authorized under 28 U.S.C. §§ 2201 and 2202.  Judicial review of Defendants' actions is authorized under 5 U.S.C. §§ 701-706.

5.      Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

6.      Plaintiff Newark Preschool is a non-profit corporation that incorporated in 1965 under the laws of the State of New Jersey.  Plaintiff's mission is to provide early childhood education, social services, and health services, to eligible prenatal mothers, young children and families.

7.      Defendant United States Department of Health and Human Services is an agency of the United States government within the meaning of 5 U.S.C. § 701(b)(1).  Under 42 U.S.C. §§ 9831-9852 (the "Head Start Act"), the Secretary of HHS is the executive branch official responsible for the administration of the federal Head Start and Early Head Start programs.  The

Secretary has delegated authority of these programs to an operating division within HHS, the

Administration for Children and Families ("ACF"). An office of ACF, the Office of Head Start

("OHS"), administers grant funding and oversight to the agencies that provide Head Start

services.

8.     Defendant Sylvia Mathews Burwell is the Secretary of the United States

Department of Health and Human Services and is therefore the official within the executive

branch of the United States government ultimately responsible for carrying out the programs and

activities of that department according to the mandates of federal law.

## LEGAL FRAMEWORK

*Statutory Authorization and Funding Structure*

9.     The Head Start program came into existence soon after the enactment of the

Economic Opportunity Act of 1964.  It delivers comprehensive, high quality services to either

low-income or categorically eligible families and is designed to foster the healthy development

of young children between the ages of three and the age of compulsory school attendance.  The

Head Start program provides a wide range of individualized services, including education and

early childhood development; medical, dental and mental health; and nutrition.

10.     The Head Start program was subsequently expanded to include services to

eligible families with children from birth to age three, as well as pregnant women.  This

expansion is known as Early Head Start.

11.     HHS implements the Head Start program through awards of federal financial

assistance to local public, private nonprofit and for-profit organizations within a community.  42

U.S.C. § 9836(a)(1).  An organization must demonstrate, among other things, its capacity to (1)

provide needed services to children (2) provide appropriate services to children with special

physical and/or educational needs, (3) meet the needs of children and families whose primary

language is other than English, (4) involve parents in a meaningful fashion in the planning,

design, and implementation of Head Start activities, and (5) coordinate with local child care

providers and educational institutions to ensure that participating children are prepared to enter

elementary school by the age of compulsory school attendance.  42 U.S.C. § 9836(d)(2).

*Head Start Monitoring, Enforcement and Quality Assurance*

12.     Once organizations are designated as Head Start agencies, they are subject to

monitoring by ACF through periodic on-site reviews for the purpose of "determin[ing] whether

Head Start agencies meet standards … established under this subchapter with respect to program,

administrative, financial management, and other requirements, and in order to help the programs

identify areas for improvement and areas of strength as part of their ongoing self-assessment

process." 42 U.S.C. § 9836(c)(1).

13.     If ACF documents deficiencies in a Head Start program, a grantee must initiate

corrective actions in order to continue receiving Head Start financial assistance.  *See* 45 C.F.R.

§§ 1304.60, 1304.61.  The range and materiality of potential deficiencies can vary significantly

and some can be minor.

14.     ACF demands that grantees immediately cure deficiencies that either (1) involve a

risk to the health or safety of program participants or staff, or (2) "pose[] a threat to the integrity

of Federal funds."  42 U.S.C. § 9836(e)(1)(B)(i).  As to all other deficiencies, ACF may require

correction either within 90 days of grantee notification (if ACF deems such a time frame to be

reasonable) or by the deadline set in an approved "quality improvement plan" (which can be no

later than one year after grantee notification).  42 U.S.C. § 9836(e)(1)(B)(ii)-(iii).

15.     A grantee's failure timely to correct a deficiency will result in termination of its designation as a Head Start agency and loss of federal financial assistance under the Head Start Act.  42 U.S.C. § 9836(e)(1)(c); 45 C.F.R. § 1304.60(f).

16.     Although HHS regulations provide a mechanism for administrative review of enforcement actions arising out of a grantee's failure timely to correct one or more deficiencies no such administrative appeal is available for deficiency determinations in and of themselves.  It is only where a deficiency has gone uncorrected and ACF has taken steps to terminate a grantee's Head Start financial assistance that the grantee might be able to challenge an ACF deficiency finding.

*2007 Head Start Reauthorization/Amendments*

17.     On December 12, 2007 Congress reauthorized the Head Start Act in the Improving Head Start for School Readiness Act of 2007, Pub. L. No. 110-134, 121 Stat. 1363 (2007) (the "2007 Reauthorization").

18.     Prior to ACF's implementation of certain provisions of the 2007 Reauthorization, grants awarded to entities designated as Head Start agencies were for an "indefinite" project period; *i.e.*, HHS automatically renewed a grantee's funding from year to year so long as the grantee met Head Start programmatic and regulatory requirements.

19.     As amended, the Head Start Act now mandates five-year grant periods, which can be renewed on a competitive or non-competitive basis depending on various factors specified in the Designation Renewal System ("DRS") regulations.  42 U.S.C. § 9836(c).

20.     Under the DRS regulations, if an agency has "one or more deficiencies on a single review" that was conducted within a defined time period, the agency must renew the grant on a competitive basis.  45 C.F.R. § 1307.3.

21.     If an agency is determined to have a deficiency that triggers competitive renewal, ACF notifies the agency that it "will be required to compete for funding for an additional five-year period."  45 C.F.R. § 1307.7.

22.     Any competition required by the 2007 Reauthorization shall be an "open competition."  42 U.S.C. § 9836(d).

23.     The competition must also be fair and equitable: "It is intended that … applicants to administer programs receive fair and equitable consideration; and that the legal rights of current Head Start and Early Head Start grantees be fully protected."  42 C.F.R. § 1307.1.

24.     In recent litigation before this Court, ACF interpreted its obligations to hold an open and fair competition.

25.     In *Macon-Bibb County Economic Opportunity Council, Inc. v. United States Department of Health and Human Services, et. al.*, No. 15-1850 (RBW) (D.D.C. filed October 30, 2015), an applicant challenged ACF's conduct in a competition for a Head Start grant.

26.     On March 23, 2016, ACF issued a "Funding Decision Memorandum for ACF Fiscal Year 2016 Discretionary Grant Awards-- ACTION-- DRS Competition for Head Start and/or Early Head Start in Macon, Bibb, and Monroe Counties, Georgia" (the "Funding Decision Memorandum").  Ex. 1.

27.     The Funding Decision Memorandum states that because ACF has a mandate to be a "good steward of Federal funds," ACF is unable to award Head Start and Early Head Start grants based on "outdated applications … that are more than one-year-old."  *Id.*

28.     ACF acknowledged in the Funding Decision Memorandum that to award a grant based on a competition more than one-year-old, ACF would need to solicit substantially new

applications from each applicant because, among other things, "[t]he factual conditions upon which organizations based their applications may have changed significantly." *Id.*

29.     ACF noted specifically that the funding opportunity announcement at issue in *Macon-Bibb* required "applicants to respond to a set of important questions, such as community need and demographics, proposed staff, and available facilities." *Id.*

30.     ACF acknowledged that soliciting substantially new applications from some but not all applicants would violate open and fair competition requirements under the Head Start Act. *Id.*

## FACTUAL BACKGROUND

31.     Newark Preschool has been delivering high-quality Head Start services to Newark's children and families since 1965.

32.     Until June 30, 2014, Newark Preschool was the largest Head Start service provider in the State of New Jersey, providing both Head Start and Early Head Start services, operating 35 sites throughout the city, employing approximately 500 staff and serving more than 2,500 children and families.

33.     During a review of Newark Preschool's Head Start program in 2012, ACF documented deficiencies regarding Newark Preschool's procedures for monitoring its Head Start collaboration partners.

34.     In March 26, 2013, ACF found that the deficiencies had been fully corrected.

35.     After the 2012 review, Newark Preschool had no deficiency findings.

36.     Even though the 2012 deficiencies were fully corrected, Newark Preschool was required to compete for renewal of its Head Start grant pursuant to regulations that ACF issued in 2011.

37.     On January 14, 2013, ACF sent a letter to Newark Preschool explaining that should Newark Preschool wish to continue receiving Head Start funds, Newark Preschool would need to submit an application in response to a funding announcement opportunity that would be published in "early 2013".  Ex. 2.

*ACF solicits applications.*

38.     On or about July 24, 2013, ACF posted a funding opportunity announcement for the City of Newark, New Jersey service area.

39.     Newark Preschool submitted a timely application in response to the solicitation.

40.     On May 8, 2014, Ann Linehan, acting director of OHS, advised Newark Preschool, by email, that its application had not been selected for any portion of the grant.  Ex. 3.

41.     Linehan attached to her email an evaluation of Newark Preschool's application.

42.     The evaluation stated that Newark Preschool's application was missing pages, yet also quoted from the allegedly missing pages.

43.     On June 3, 2014, Newark Preschool filed a complaint and motion for preliminary injunction in the United States District Court for the District of New Jersey.  *See* Complaint, attached without exhibits as Ex. 4.

44.     The complaint and motion for preliminary injunction alleged that ACF had held an unfair and inequitable competition in violation of fair competition requirements of the Head Start Act.  *Id.*

45.     Newark Preschool requested, among other things, that the court enjoin ACF from awarding the Head Start grant to any grantee without holding a fair and equitable competition.  *Id.*

46.     ACF informed Newark Preschool that it had awarded a portion of the grant to the Newark Public Schools.

47.     ACF declined to award the remainder of the grant to any applicant to the FOA and represented that it would issue a new funding opportunity announcement for the remainder of the service area. ACF also represented that it would conduct a fair and open competition to which Newark Preschool could apply.

48.     On the understanding that ACF would hold a fair and open competition to which Newark Preschool could apply, Newark Preschool dismissed its complaint and motion for preliminary injunction without prejudice.

49.     On or around June 9, 2014, Carolyn Baker Goode, Acting Regional Program Manager Head Start/Early Head Start, Early Childhood Development, held a meeting with Newark Preschool.

50.     Baker Goode stated that Community Development Institute ("CDI") would be appointed an interim Head Start/ Early Head Start grantee in the Newark, New Jersey service area.

51.     Because ACF often appoints the existing grantee to serve as the interim grantee pending applications for the service area, Karen Highsmith, Executive Director of Newark Preschool, inquired as to whether Newark Preschool could serve as the interim grantee for the Newark, New Jersey service area, either independently or in conjunction with CDI.

52.     In response, Baker Goode stated that "Newark Preschool is dead."

53.     Baker Goode informed Highsmith, for the first time, that Newark Preschool would need to close out the grant and transition the grant to CDI within three weeks, all while continuing to provide Head Start services for the remainder of the school year.

*The disposition letter*

54.     In spite of ACF's understanding that Newark Preschool intended to submit an

application to continue to provide Head Start services in the Newark service area, by letter dated

June 13, 2014 (the "Disposition Letter"), ACF provided Newark Preschool with "disposition

instructions" for seven properties (collectively, the "Properties"), including (1) 225-237 Broad

Street. Newark, New Jersey 07104 ("Sharpe James"); (2) 298-300 Chancellor Avenue, Newark.

New Jersey 07112 ("Alberta Bey"); (3) 433 South 15th Street Newark, New Jersey 07103

("Edna R. Thomas"); (4) 164-174 Roseville Avenue, Newark, New Jersey 07107 ("Audrey

West"); (5) 87-89; 93 St. Francis Street, Newark, New Jersey 07105 ("St. Francis"); (6) 201 First

Street- Newark Pre-School Academy. Newark, NJ, 07107 (the "Academy"); and (7) 292-296

Chancellor Avenue. Newark, New Jersey 07112 (the "Commercial Kitchen").  Ex. 5.

55.     The Disposition Letter gave Newark Preschool ten days to transfer title to the

properties to CDI.  *Id.*

56.     The Disposition Letter provided that "[i]n the event that you believe that some

percentage of the fair market value of the property is attributable to your agency's non-Federal

contributions to the property, records supporting the percentage claimed should be provided to

the Grants Officer indicated above to facilitate calculation of the Federal and non-Federal

percentage (if any) of the current fair market value of the property. We expect your cooperation

in the execution and completion of the documents necessary to effectuate the transfer of title as

soon as we determine whether or not your records establish your agency is entitled to

compensation based on a percentage of non-federal contributions to the properties at issue."  *Id.*

57.     In or around July 2014, Patrick Council, Board Chair of Newark Preschool,

informed Baker Goode that Newark Preschool disputed the federal government's interest in

several of the properties listed on the Disposition Letter.

*Close out*

58.     From June 9, 2014 through June 30, 2014, Newark Preschool continued to

provide Head Start services at 35 locations.  Newark Preschool also began the process of closing

a 49 year-old program, which included laying off more than 500 employees.

59.     Newark Preschool employees and volunteers worked tirelessly to transition to

CDI in three weeks so that CDI could begin providing Early Head Start services as of July 1,

2014 and Head Start services as of September 2014.

60.     In order for CDI to begin providing Early Head Start and Head Start services,

Highsmith and CDI negotiated a master lease agreement whereby Newark Preschool leased to

CDI the Properties, along with the accompanying State of New Jersey child care licenses.

61.     Upon information and belief, ACF was aware of the lease agreement.

*The revised FOA*

62.     On or around September 12, 2014, ACF sent an email to unknown recipients with

the subject line "Office of Head Start - Funding Opportunity Community Outreach - Newark,

NJ."  Ex. 6.

63.     The September 12, 2014 email invited prospective applicants to a meeting to be

held on September 23, 2014, where prospective applicants could "meet with a Regional Office

Representative, view a presentation on the application process and [] walk through a few of the

facilities with Federal Interest that are currently being used to provide Head Start services for the

Newark, New Jersey service area."  *Id.*

64.     A flier attached to the September 12, 2014 email stated that ACF was looking for a "new agency" to administer Head Start for the Newark, New Jersey service area. *Id.*

65.     Highsmith, the individual designated to receive communications on behalf of Newark Preschool, did not receive the September 12, 2014 email from ACF.

66.     On or around September 23, 2014, ACF posted a revised funding opportunity announcement for a Head Start and/or Early Head Start Grantee for the City of Newark, New Jersey service area, HHS-2015-ACF-OHS-CH-R02-0968 (the "FOA"). Ex. 7.

67.     Newark Preschool submitted a timely application in response to the FOA.

*Discussions regarding the Properties*

68.     From July 2014 through May 2015, ACF did not contact Newark Preschool regarding the Properties.

69.     Beginning in June 2015, representatives of ACF and Newark Preschool exchanged several emails regarding the Properties.

70.     Newark Preschool provided documentation disputing any federal interest in Alberta Bey, Edna R. Thomas and Sharpe James.  Despite this documentation, ACF continued to insist that it had a 100% federal interest in these properties.

71.     Despite Newark Preschool's pending applications to provide Head Start and Early Head Start services in the Newark service area, by letter dated January 15, 2016 (erroneously dated January 15, 2015), ACF provided Newark Preschool with new disposition instructions for the Properties (the "2016 Disposition Instructions").  Ex. 8

72.     By letter dated February 9, 2016, Newark Preschool, through counsel, informed ACF that it contested the 2016 Disposition Instructions.  Ex. 9.

*The grant award*

73.     On or around March 15, 2016, one and a half years after submitting its

application, Newark Preschool received a letter from Linehan stating that Newark Preschool had

not been selected for funding under the FOA.

74.     Newark Preschool requested a debriefing by telephone conference, which took

place on April 6, 2016.

75.     At the debriefing, Shawna Pinckney, Director of the Grants and Contracts

Division at OHS, informed Newark Preschool that ACF was "negotiating" with two other

applicants.  Like Newark Preschool, these applicants had submitted their applications one and a

half years earlier, in November 2014, and had responded to important questions in the FOA such

as community need and demographics, proposed staff, and available facilities.

76.     Newark Preschool was never given an opportunity to supplement its application.

77.     Pinckney informed Newark Preschool that ACF expected to make an award in

June 2016.

78.     On April 26, 2016, Newark Preschool sent a letter to Blanca Enriquez, Director of

OHS, demanding that ACF cease negotiations because, among other things, negotiations based

on applications submitted one and a half years ago violate the statutory requirement to hold an

open and fair competition.  Ex. 10.

79.     By response dated May 10, 2016, ACF stated that it "made an award for a second

portion of the divided service area on May 1, 2016."  Ex. 11.  ACF further provided that it

"hopes to make an award for the remaining portion by July 1, 2016."  *Id.*

## CAUSES OF ACTION

### COUNT I
### ADMINISTRATIVE PROCEDURE ACT:
### (Unfair Treatment)

80.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 79, above.

81.     ACF is obligated to ensure that "applicants to administer programs receive fair and equitable consideration; and that the legal rights of current Head Start and Early Head Start grantees be fully protected."  42 C.F.R. § 1307.1.

82.     ACF made statements indicating that it would not consider awarding a Head Start or Early Head Start grant to Newark Preschool.

> a.  Carolyn Baker Goode stated that "Newark Preschool is dead" in response to a question about whether Newark Preschool could operate as an interim grantee for the Newark service area.

> b.  ACF invited prospective bidders to a meeting regarding the FOA, and indicated in a flier attached to the invitation that ACF was looking for a "new agency" to provide Head Start services.

83.     ACF's conduct demonstrates that it did not consider awarding a Head Start or Early Head Start grant to Newark Preschool.

> a.  ACF failed to invite Newark Preschool to a meeting regarding the FOA.

> b.  ACF provided disposition instructions to Newark Preschool even though Newark Preschool had an outstanding application to provide Head Start and Early Head Start services in the City of Newark service area.

14

84.     ACF's unfair treatment of Newark Preschool is arbitrary and capricious and a violation of law.

85.     Newark Preschool has suffered actual injury as a proximate result of ACF's actions and/or omissions.

### COUNT II
### ADMINISTRATIVE PROCEDURE ACT:
**(Failure to Conduct an Open Competition/ Negotiations with Applicants)**

86.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 85, above.

87.     ACF is required to conduct an "open competition" before awarding a Head Start grant.  42 U.S.C. § 9836(d).

88.     ACF is obligated to ensure that "applicants to administer programs receive fair and equitable consideration; and that the legal rights of current Head Start and Early Head Start grantees be fully protected."  42 C.F.R. § 1307.1.

89.     ACF failed to hold an open and fair competition by, among other things, engaging in negotiations with some but not all applicants to the FOA.

90.     ACF's failure to hold an open and fair competition is arbitrary and capricious and a violation of law.

91.     As an entity that submitted a proposal in response to the FOA, Newark Preschool has been injured by ACF's failure to hold an open and fair competition.

### COUNT III
### ADMINISTRATIVE PROCEDURE ACT:
**(Failure to Conduct an Open Competition/ Stale Competition)**

92.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 91, above.

15

93.     Upon information and belief, ACF has awarded a grant based on a competition that began more than one year ago and will award an additional grant based on the same competition.

94.     To the extent that ACF relied and/or will rely on outdated applications to make a grant award, ACF failed to adequately consider factors required by the Head Start Act.

95.     To the extent ACF solicited and/or will solicit new or supplemental applications from some but not all applicants, ACF violated the requirements of open and fair competition under the Head Start Act.

96.     ACF's actions violate its obligation to hold an "open competition" prior to making a Head Start award.

97.     ACF's actions violate its obligation to treat all applicants fairly.

98.     ACF's actions are arbitrary and capricious.

99.     As an entity that submitted a proposal in response to the FOA, Newark Preschool has been injured by ACF's refusal to repost the FOA to allow for open and fair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an order:

1.      Declaring that Defendants violated the requirement, under the Head Start Act, to conduct an "open competition;"

2.      Declaring that Defendants violated their obligation to ensure that applicants to administer Head Start programs receive fair and equitable consideration, and that the legal rights of current Head Start and Early Head Start grantees be fully protected;

3.      Declaring that Defendants acted arbitrarily and capriciously;

4.      Enjoining Defendants from proceeding with an award of a Head Start or Early Head Start grant based on the FOA;

5.      Directing Defendants to post a new funding opportunity announcement so as to allow open competition for Head Start/Early Head Start for the City of Newark, New Jersey service area; and

6.      Affording Plaintiff such other and further relief as the Court deems just and equitable.


Respectfully submitted,


Date: May 31, 2016                    /s/ Nicole M. Bacon
                                      Edward T. Waters (DCD No. 422461)
                                      Nicole M. Bacon (DCD No. 982538)

                                      FELDESMAN TUCKER LEIFER FIDELL LLP
                                      1129 20th Street, N.W., 4th Floor
                                      Washington, DC 20036
                                      (202) 466-8960 (telephone)
                                      (202) 293-8103 (facsimile)
                                      E-mail:ewaters@ftlf.com
                                              nbacon@ftlf.com